20-4034-cv
John A. Burke v. United States of America

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 20th day of January two thousand twenty-two.

Present:     ROSEMARY S. POOLER,
             DENNY CHIN,
             SUSAN L. CARNEY,
                  *Circuit Judges*.

_____

JOHN A. BURKE,

                     *Petitioner-Appellant*,

             v.                                               20-4034-cv

UNITED STATES OF AMERICA,

                     *Respondent-Appellee*.

_____

Appearing for Appellant:     Justin C. Bonus, Forest Hills, N.Y.

Appearing for Appellee:      Whitman G.S. Knapp, Assistant United States Attorney (Jo Ann M. Navickas, Assistant United States Attorney, *on the brief*), *for* Jacquelyn M. Kasulis, Acting United States Attorney *for* the Eastern District of New York, Brooklyn, N.Y.

Appeal from the United States District Court for the Eastern District of New York (Johnson, *J.*).

    **ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of said District Court be and it hereby is **AFFIRMED**.

    John A. Burke appeals from the November 30, 2020 order of the United States District Court for the Eastern District of New York (Johnson, *J.*) denying Burke's motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

    We review a district court's legal conclusions in denying a habeas petition de novo and its factual findings for clear error. *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009). Burke first argues that he suffered ineffective assistance of counsel because his counsel failed to put him on the stand to testify during trial. The question of "whether a defendant's lawyer's representation violates the Sixth Amendment right to effective assistance of counsel is a mixed question of law and fact and is reviewed de novo." *Chang v. United States*, 250 F.3d 79, 82 (2d Cir. 2001) (internal quotation marks and citation omitted). To establish a prima facie case of ineffective assistance, Burke must set forth a colorable claim under the two-prong test put forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a defendant show that "(1) his counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceeding would have been different." *Flores v. Demskie*, 215 F.3d 293, 300 (2d Cir. 2000) (internal quotation marks omitted). A petitioner's claim is not plausible if it "fails to meet either the performance prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011). "[A]ny claim by the defendant that defense counsel has not discharged this responsibility—either by failing to inform the defendant of the right to testify or by overriding the defendant's desire to testify— must satisfy the two-prong test established in *Strickland*." *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997).

    In support of his habeas petition, Burke submitted an affidavit in which he averred that told his counsel he wanted to testify at trial, that counsel decided against it and never informed him that it was his choice to make. Howard Jacobs, Burke's lead trial counsel, passed away shortly before Burke filed his habeas petition. However, Burke's remaining two counsel, Richard Jasper and Ying Stafford, rebut this in affidavits averring that during their numerous conversations, Burke never expressed a desire to testify on his own behalf. Jasper stated that Burke "did testify at his pre-trial Suppression hearing which did not assist his case," and that "the consensus of the team that included Mr. Burke was that it was not worth the risk for Mr. Burke to testify at his trial." App'x 112 ¶ 4. Jasper and Stafford also averred that Jacobs never told them that Burke had any desire to testify.

    Even if Burke wanted to testify but counsel prevented it, he cannot show he was prejudiced by the denial. As detailed by the district court, the government set forth an overwhelming amount of evidence, including testimony from five cooperating witnesses who were associates of Burke's and testified as to his participation in the crimes, crime scene evidence, and circumstantial evidence. The record well-supported the jury's verdict. In the face of the government's strong case, it cannot be said that Burke was prejudiced by the decision to

not have him take the stand. The defenses that Burke wished to testify about were rebutted by copious evidence, and defense counsel put his alibi and withdrawal defenses into evidence without Burke's testimony. Thus, Burke cannot show he was prejudiced within the meaning of the *Strickland* test. *See Artuz*, 124 F.3d at 79.

Burke's second claim is that he received ineffective assistance of counsel because Stafford, the most junior member of his defense team, was fearful of Burke, and this fear created an actual conflict of interest and led to the denial of his right to testify. "The right to the effective assistance of counsel also includes the right to be represented by an attorney who is free from conflicts of interest." *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003). In evaluating this type of Sixth Amendment claim, this Court delineates three levels of conflicts of interest: "(1) a per se conflict requiring automatic reversal without a showing of prejudice; (2) an actual conflict of interest that carries a presumption of prejudice; and (3) a potential conflict of interest that requires a finding of both deficient performance by counsel and prejudice, under the standard established in *Strickland*." *United States v. John Doe No. 1*, 272 F.3d 116, 125 (2d Cir. 2001). Ineffective assistance of counsel based on conflict of interest is met if the defendant shows: "(1) a potential conflict of interest that results in prejudice to the defendant, or (2) an actual conflict of interest that adversely affects the attorney's performance." *Perez*, 325 F.3d at 125 (alterations omitted).

We have developed a three-stage analysis to determine if prejudice is presumed for an actual conflict of interest. First, the defendant must establish that an actual conflict of interest existed, which arises "when the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Moree*, 220 F.3d 65, 69 (2d Cir. 2000) (internal quotation marks and citations omitted). Second, the defendant must establish an "actual lapse in representation" that resulted from the conflict, which is demonstrated by "some plausible alternative defense strategy not taken by counsel." *Id.* (internal quotation marks and citations omitted). "The defendant need not show that the alternative defense would necessarily have been successful[,] only that it possessed sufficient substance to be a viable alternative." *Id.* (internal quotation marks omitted). Third, the defendant must show causation by demonstrating "that the alternative defense was inherently in conflict with or not undertaken *due to* the attorney's other loyalties or interests." *Id.* (internal quotation marks omitted and emphasis in original).

Burke satisfies none of the prongs. There is no evidence Stafford was fearful during her representation of him at trial. Nor is there any evidence to suggest a divergence of interest between Stafford and Burke with respect to a material factual or legal issue or to a course of action. Burke suggests that the decision to not put him on the stand was a result of Stafford's fear, but there is no support for that assertion in the record. There is also no suggestion in the record that the decision would have been Stafford's to make, and it is unlikely that it would be, considering she was the most junior attorney on the trial team. In fact, the record suggests that it was a joint decision that Burke himself was party to, based in part on his less-than-compelling testimony at his pre-trial suppression hearing and his criminal record. Furthermore. Burke's original petition for habeas relief before the district court placed the blame for not allowing him to testify squarely on his deceased attorney. Burke also argues fear led to Stafford's failure to file a petition for a writ of certiorari before the Supreme Court after appealing his underlying

conviction and lying about doing so. This issue, however, is separate and apart from the trial strategy that led the team, including Burke, to forgo Burke testifying on his own behalf. Burke's argument that Stafford admitted she was fearful while handling his petition for certiorari does not lend itself to a finding of actual conflict, either during or after the trial. As the government points out, and as we similarly found in *John Doe*, if Burke truly had insisted on testifying at trial, an attorney's fear would have actually created an incentive for that attorney to do whatever she could to further Burke's desired course of action. *John Doe*, 272 F.3d at 126 (discussing how, if the attorney was fearful due to threats, it would encourage the attorney to obtain an acquittal to placate the defendant and not cause harm to befall the attorney or his family).

Finally, Burke contends that the district court abused its discretion in failing to hold a hearing with respect to his Section 2255 petition. We review a district court's denial of a request for a hearing for abuse of discretion. *Chang*, 250 F.3d at 82. Under Section 2255, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law." 28 U.S.C. § 2255(b). However, a district court is not required to hold a hearing, especially in instances such as these where the defendant claims after the fact that he was not permitted to testify. *See Chang*, 250 F.3d at 81, 86. District courts may choose not to hold a hearing to avoid delay, the unnecessary expenditure of judicial resources, and burdening trial counsel and government. *See id.* at 86.

Here, the district court did not abuse its discretion by denying a hearing. The district court presided over Burke's criminal trial and was well-acquainted with Burke and trial counsel, but stated that, even despite this, it had reviewed "the entire record anew" in reaching its decision. App'x at 157. Additionally, the district court had a written record, including Burke's affidavit and the affidavits of his two available trial counsel. As we stated in *Chang*, the district court acted within the bounds of its discretion in deciding that the testimony of Burke and his trial counsel "would add little or nothing to the written submissions." 250 F.3d at 86.

We have considered the remainder of Burke's arguments and find them to be without merit. Accordingly, the order of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk